UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

May 16, 2023

LETTER TO ALL COUNSEL OF RECORD

Re:  *Kelly Y. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
Civil No. 22-1062-BAH

Dear Counsel:

On April 30, 2022, Plaintiff Kelly Y. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny her claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2021). I have considered the record in this case (ECF 12) and the parties' dispositive filings[1] (ECFs 15 and 17). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will DENY Defendant's motion, REVERSE the Commissioner's decision, and REMAND the case to the Commissioner for further consideration. This letter explains why.

I.    PROCEDURAL BACKGROUND

Plaintiff protectively filed a Title II application for Disability Insurance Benefits ("DIB") on August 7, 2019, alleging a disability onset of January 1, 2019. Tr. 189–92. Plaintiff's claim was denied initially and on reconsideration. Tr. 106–09; 113–18. On May 27, 2021, an Administrative Law Judge ("ALJ") held a hearing. Tr. 34–68. Following the hearing, on August 2, 2021, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 12–33. The Appeals Council denied Plaintiff's request for review, Tr. 1–6, so the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

---

[1] Standing Order 2022-04 amended the Court's procedures regarding SSA appeals to comply with the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which became effective December 1, 2022. Under the Standing Order, parties now file dispositive "briefs" rather than "motions for summary judgment." Here, Plaintiff filed a brief and Defendant filed a motion for summary judgment.

[2] 42 U.S.C. §§ 301 et seq.

II.     **THE ALJ'S DECISION**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since January 1, 2019, the alleged onset date of her disability. Tr. 17. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "coronary artery disease, atherosclerosis, arteriosclerosis status post stent placement in 2016, obesity, asthmatic bronchitis, diabetes mellitus, degenerative changes in right foot/heel, calcaneal spur, right ankle osteoarthritis, chronic obstructive pulmonary disease (COPD), cervical spine spondylosis, lumbar spine degenerative disc disease, facet degenerative joint disease, anterolisthesis, and osteoarthritis[.]" *Id*. The ALJ also determined that Plaintiff suffered from the non-severe impairments of hypertension, hyperlipidemia, vitamin D deficiency, essential thrombocythemia, a platelet disorder, erythrocytosis, mild fatty liver infiltration, lung nodules, tobacco dependence syndrome, chronic sinusitis, osteopenia in the lumbar spine and left hip, and depressive disorder. Tr. 18–19. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 22. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except the claimant has the residual functional capacity to occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about six hours in an eight-hour workday, sit for a total of about six hours in an eight-hour workday, occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, and never climb ladders, ropes and scaffolds. She must avoid concentrated exposure to extreme cold, extreme heat, and fumes, odors, dusts, gases, and poor ventilation, and all exposure to hazards such as machinery and heights. She requires the ability to alternate between sitting and standing about every 30 minutes.

Tr. 23–24. The ALJ determined that Plaintiff was able to perform her past relevant work as an accountant clerk (DOT[3] #216.482-010) because it did not require the performance of work-related

---

[3] The "DOT" is shorthand for the Dictionary of Occupational Titles. The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected*

*Kelly Y. v. Kijakazi*
Civil No. 22-1062-BAH
May 16, 2023
Page 3

activities that were precluded by the RFC and because Plaintiff worked in this position "for a sufficient amount of time to learn the skills to return to this job." Tr. 28–29. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 29.

### III. LEGAL STANDARD

As noted, the scope of my review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV. ANALYSIS

Plaintiff raises three arguments on appeal, specifically that the ALJ: (1) erroneously evaluated her subjective complaints; (2) failed to provide an adequate RFC determination; and (3) erroneously relied upon the testimony of the vocational expert. ECF 15, at 3–16. Defendant counters that: (1) the ALJ properly considered Plaintiff's complaints in accordance with SSA regulations; (2) the ALJ's RFC is supported by substantial evidence; and (3) Plaintiff's argument regarding the vocational expert's testimony is unavailing because Plaintiff failed to prove that she could not perform past relevant work. ECF 17-1, at 5–21.

The Court begins by considering Plaintiff's third and final argument, as it finds this argument dispositive. Plaintiff argues that the ALJ "improperly injected the issue of accommodation into the disability determination"[4] process by considering the vocational expert's

---

*Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

[4] Both parties use the term "reasonable accommodation" as defined under the Americans with Disabilities Act ("ADA"). *See* ECF 15, at 14; ECF 17-1, at 20 ("While an ALJ may not consider specific scenarios as to reasonable accommodations that a particular employer may make under the ADA, the ALJ may consider a vocational expert's testimony that certain limitations are generally accommodated in the marketplace.").

*Kelly Y. v. Kijakazi*
Civil No. 22-1062-BAH
May 16, 2023
Page 4

testimony that Plaintiff would require an adjustable desk to perform her past relevant work as an accountant clerk. ECF 15, at 12–16. In response, Defendant avers that Plaintiff "failed to meet her burden of proving that she could not perform her past relevant work" and that the vocational expert's testimony was properly considered because it "merely reflected his professional opinion as to the availability of typical modifications in the workplace generally, as opposed to more formal accommodations that must be expressly requested[.]" ECF 17-1, at 17–21.

The SSA defines "accommodations" as "practices and procedures that allow a person to complete the same activity or task as other people." SSR 11-2p, 2011 WL 4055665, at *8 (S.S.A. Sept. 12, 2011). "Accommodations can include a change in setting, timing, or scheduling, or an assistive or adaptive device." *Id.* The United States Supreme Court has explained that, in making a disability determination, an ALJ "does *not* take the possibility of 'reasonable accommodation' into account[.]" *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 803 (1999) (emphasis in original). In *Cleveland*, the Supreme Court explained that "the matter of 'reasonable accommodation,'" unlike the question of whether an individual's RFC precludes work under the SSA disability regime, is "workplace-specific." *Id.* The Court further explained that a determination about reasonable accommodations "may turn on highly disputed workplace-specific matters; and an SSA misjudgment about that detailed, and often fact-specific matter would deprive a seriously disabled person of the critical financial support the statute seeks to provide." *Id.* (citations omitted).

Following the Supreme Court's decision in *Cleveland*, the SSA explained that when it "determine[s] whether a person can perform his or her past relevant work, [it does] not consider potential accommodations unless his or her employer actually made the accommodation." SSR 11-2p, 2011 WL 4055665, at *9. Nonetheless, courts applying *Cleveland* have determined that the SSA does not err in considering accommodation-related testimony if such testimony is "not contingent on potential employers providing any reasonable accommodations." *Arthur v. Saul*, Civ. No. 19-186, 2020 WL 6381136, at *7 (E.D. Va. June 3, 2020) (citation omitted), *report and recommendation adopted*, 2020 WL 5701885 (E.D. Va. Sept. 24, 2020); *see Hall v. Berryhill*, Civ. No. 18-302, 2018 WL 8017182, at *14 (S.D. W. Va. Dec. 6, 2018) (finding no error where a vocational expert was not testifying that a claimant's "limitations would require a formal accommodation," but was "merely opin[ing]" that the limitations "were of the type generally accepted by employers in an office setting with clerical positions"), *report and recommendation adopted*, 2019 WL 495586 (S.D. W. Va. Feb. 8, 2019); *see also Blackette v. Colvin*, 52 F. Supp. 3d 101, 117–18 (D. Mass. 2014) (interpreting *Cleveland* to mean that the SSA "cannot consider the possibility that a claimant will receive an accommodation in determining whether they would be able hold a job (i.e., the hearing officer could not say 'this claimant would be disabled unless she received a reasonable accommodation, but I will assume she will receive such an accommodation')" (citation omitted)).

Here, the vocational expert opined that Plaintiff could perform her past relevant work as an accountant clerk as that job is generally performed.[5] Tr. 43. The vocational expert was asked

---

[5] The vocational expert also opined that Plaintiff could perform work as a receptionist (DOT

whether Plaintiff's need to alternate between sitting and standing about every 30 minutes would preclude work. Tr. 43. The ALJ specified that this limitation would involve Plaintiff "standing three hours out of an eight-hour workday." Tr. 44. The vocational expert responded that this limitation "would need accommodation." *Id.* Specifically, the vocational expert testified that Plaintiff "would need a . . . desk that would be movable up and down so that she could continue to work standing. Otherwise . . . the job cannot be performed." *Id.* The vocational expert then confirmed, based on his education and experience, that an employer would "generally" provide such a desk. *Id.* Accordingly, the ALJ concluded that Plaintiff could perform past relevant work as an accountant clerk. Tr. 28–29. The ALJ further noted that "the vocational expert testified that an individual who can alternate between sitting and standing at will is capable of meeting competitive productivity levels. These individuals would need an adjustable desk if having to stand for prolonged periods[,] but such [a desk] is customarily provided by employers if needed." Tr. 29. As such, the ALJ concluded that Plaintiff was not disabled. *Id.*

Plaintiff is correct that this analysis warrants remand. The facts of this case are similar to those of *Garcia v. Colvin*, Civ. No. JST-12-5513, 2013 WL 5514294 (N.D. Cal. Oct. 3, 2013). In that case, the vocational expert opined that while the claimant could not perform past sedentary work if given the option to alternate between sitting and standing, that work *could* be performed if the claimant had access to an "adjustable desk." *Id.* at *7. The claimant had no access to such a desk in her past relevant work. *Id.* Accordingly, the court recognized that "any determination by the ALJ which was based on VE testimony which assumed the availability of adjustable desks was . . . error [because] the ALJ's step four determination cannot take into account the possibility of a reasonable accommodation."[6] *Id.* (citing *Cleveland*, 526 U.S. at 803); *see also Alvarez v. Kijakazi*, Civ. No. 21-21805, 2022 WL 4280474, at *4 (S.D. Fla. Sept. 6, 2022) (remanding to the SSA because, "contrary" to *Cleveland*, the ALJ "assumed that [p]laintiff's employer would grant her some sort of accommodation (e.g., an adjustable standing desk) that would permit her to remain on task despite her need to alternate between sitting and standing"), *report and recommendation adopted*, 2022 WL 4272289 (S.D. Fla. Sept. 15, 2022).

Here, as in *Garcia*, the vocational expert explicitly opined that Plaintiff could only perform her past relevant work if she were provided an adjustable desk. But there is no evidence in the record to suggest that Plaintiff was provided such a desk while she was still employed. Nor is it clear from the record that Plaintiff's access to an adjustable desk would be guaranteed.[7] *See* Tr.

---

#237.367-038) as that job is generally performed. Tr. 51. He acknowledged that his testimony regarding the receptionist position would "essentially be the same" as that which he provided regarding the accountant clerk position. *Id.* But the ALJ did not incorporate this opinion into his decision. Tr. 28–29.

[6] The court in *Garcia* ultimately determined that the ALJ's error was harmless because, unlike in the instant case, substantial evidence showed that the claimant could sit or stand as needed, "regardless of whether she was accommodated with an adjustable desk." *Garcia*, 2013 WL 5514294, at *8.

[7] To the extent that the vocational expert *could* guarantee that a desk would be provided, such

29 (stating that the desk is "customarily provided"); Tr. 44 (referring to the provision of the desk as "customary" and "generally done"). Further, the ALJ's disability determination explicitly depended upon the vocational expert's testimony that Plaintiff required—and would be provided—an accommodation to perform her job.[8] Tr. 29. As to Defendant's argument that "[t]he vocational expert did not presume that Plaintiff would receive a 'reasonable accommodation,' under the ADA," ECF 17-1, at 21, I cannot find that the present record fully supports that statement. On this record, it is unclear whether the ALJ's statement that standing desks are "customarily provided" referred to an ADA accommodation or, as Defendant contends, merely referred to a more informal workplace accommodation that is generally provided. I believe remand is appropriate so that the ALJ can clarify this key point. Guessing the meaning of the ALJ's reference to this accommodation here is particularly problematic given that the ALJ did not determine that Plaintiff could perform any alternative jobs that exist in significant numbers in the national economy. Given the critical role that the accommodation played in the SSA's decision to deny Plaintiff benefits, I agree with Plaintiff that the ALJ and the vocational expert "improperly injected the issue of accommodation into the disability determination." ECF 15, at 14.

In sum, remand is warranted so that the ALJ can consider, without respect to the availability of accommodations, whether Plaintiff meets her step-four burden of showing that she cannot perform past relevant work. Because the case is being remanded on other grounds, I need not address Plaintiff's arguments regarding the ALJ's assessment of subjective complaints or the RFC. On remand, the ALJ is welcome to consider these arguments and make any required adjustments to the opinion.

V.  **CONCLUSION**

For the reasons set forth herein, Defendant's motion for summary judgment, ECF 17, is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

---

testimony would be improper—it is "outside the qualification for a vocational expert to hypothesize that an employer will accommodate an impaired employee." *Singleton v. Berryhill*, Civ. No. MGG-17-576, 2018 WL 4579711, at *4 (N.D. Ind. Sept. 25, 2018) (citations omitted).

[8] Defendant contends that "[w]hile an ALJ may not consider specific scenarios as to reasonable accommodations[,] . . . the ALJ *may* consider a vocational expert's testimony that certain limitations are generally accommodated in the marketplace." ECF 17-1, at 20 (emphasis in original) (citations omitted). Defendant's contention, while true, misses the mark. The issue here is not whether Plaintiff's limitation (specifically, the need to alternate between sitting and standing) was properly considered; rather, it is whether the vocational expert and the ALJ properly considered an accommodation that is necessary to account for that limitation.

*Kelly Y. v. Kijakazi*  
Civil No. 22-1062-BAH  
May 16, 2023  
Page 7

        Sincerely,

        /s/

        Brendan A. Hurson  
        United States Magistrate Judge